## COMMONWEALTH v. REES.

September 10, 1836.

### Case stated.

Replevin for goods (distrained for rent in arrear) which were delivered to A, the plaintiff. B, the defendant, obtained judgment for the amount of the rent, issued a *retorno habendo*, which was returned *eloigned*, and thereupon took an assignment of the replevin bond from the sheriff, and prosecuted the same to judgment. Without issuing execution on this judgment (one of the defendants therein, a surety in the replevin bond, being at the time absent from the state), B issued a *scire facias* against the sheriff and his sureties on their official recognizance, the ground of which suit was, that the sheriff had taken insufficient sureties in the replevin. *Held:*

1. The taking of an assignment by B of the replevin bond is not, *per se*, a waiver of the liability of the sheriff for taking insufficient sureties in replevin.

2. B might proceed against the sheriff for taking such sureties, without being obliged to resort to the replevin bond.

3. But if he (as in the above stated case) does take an assignment of the replevin bond, and institutes suit thereon, his proceedings on the same must, in order to test the insufficiency of the pledges in replevin, extend to final judgment and *execution*, before he can revert to the general liability of the sheriff for taking such pledges, which liability has *ad interim* been suspended.

THIS was an action of *scire facias* against the sheriff and his sureties on their official recognizance. The cause of action was, that the sheriff had taken insufficient pledges in replevin.

The facts upon which the questions for the court were raised fully appear in the following case, which was stated for the opinion of the court in the nature of a special verdict.

" Charles Roberts and Samuel Garrigues, as bailiffs of Persifor Frazer, distrained on the goods of Rachel Purdon, for rent due said Frazer on the 1st of December 1831, amounting to 355 dollars. The said Rachel Purdon brought replevin in the said court to March term 1832, No. 5, on which the goods distrained were delivered to to her by the sheriff.

" The replevin bond is dated December 7th, 1831, (*prout* replevin bond) and the sureties in the bond were Rachel Purdon and Joseph R. Purdon.

" By agreement, filed March 22d, 1832, judgment was confessed for the defendants in replevin (*prout* agreement and judgment).

[Commonwealth v. Rees.]

" A *retorno habendo* issued to September term 1832, which was returned " *eloigned*" (*prout* writ and return).

" On the 21st day of February 1833 the said Charles Roberts and Samuel P. Garrigues took from the sheriff an assignment of the replevin bond.

" The said Charles Roberts and Samuel P. Garrigues, to the use of Persifor Frazer, brought an action of debt on the said bond against the said Rachel Purdon and Joseph Purdon, to March term 1833, No. 623, which suit, on the 22d of July 1833, was discontinued by plaintiff's attorney (*prout* record).

" The same plaintiffs instituted a suit by *capias* on the 22d of July 1833, against the same defendants, to September term 1833, No. 269, in which suit, by agreement filed, judgment was entered for the plaintiff against Joseph R. Purdon, in the sum of 400 dollars 68 cents, as on an award of arbitrators filed April 12th, 1834 (*prout* record).

" It is agreed that the said Joseph R. Purdon, at the time of the return of the replevin aforesaid, was, and now is, a resident of New Orleans.

" The question intended to be raised is, whether the plaintiffs, having taken an assignment of the replevin bond from the sheriff, are precluded, by that act and their subsequent proceedings aforesaid, from recovering in this action.

" If the court are of opinion that they are precluded, then judgment to be entered for the defendants.   If they are of a contrary opinion, then judgment to be entered for the plaintiffs."

*M'Call* and *H. J. Williams*, for the plaintiff.

By the 11th section of the act of the 21st of March 1772, it is enacted : "And to prevent vexatious replevins of distresses taken for rent, be it enacted, that all sheriffs and other officers, having authority to serve replevins, may and shall in every replevin of a distress for rent, take in their own names from the plaintiff, and one responsible person as surety, a bond in double the value of the goods distrained (such value to be ascertained by the oath or affirmation of one or more credible person or persons not interested in the goods or distress) ; which oath or affirmation, the person serving such replevin is hereby authorized and required to administer, and conditioned for prosecuting the suit with effect and without delay, and for duly

[Commonwealth v. Rees.]

returning the goods and chattels distrained in case a return shall be awarded before any deliverance be made of the distress; and such sheriff or other officer as aforesaid taking any such bond shall, at the request and costs of the avowant or person making conusance, assign such bond to the avowant or person aforesaid, by indorsing the same, and attesting it under his hand and seal in the presence of two credible witnesses; and if the bond so taken and assigned be forfeited, the avowant or person making conusance may bring an action and recover thereupon in his own name."

This is a transcript of the 11th *Geo.* 2, c. 19, except that that statute requires a bond with two sureties.

The statute *Westm.* 2 (13th *Edw.* 1, c. 2) required the sheriff to take from the plaintiff *pledges* for prosecution of the suit and also for a return, which was usually by bond.

The two statutes being *in pari materiâ*, the decisions upon them agree.

The words of the statute 13th *Edw.* 1, c. 2, are: "and because it chanceth sometimes that the tenant after that he hath replevied his beasts doth sell or alien them, whereby return cannot be made unto the lord that distrained, if it be adjudged, it is provided that sheriffs or bailiffs from henceforth shall not only receive of the plaintiffs pledges for the pursuing of the suit, before they make deliverance of the distress, but also for the return of the beasts, if return be awarded." Sheriff might always replevy taking sufficient distress. 7 *Taunt.* 28. The sheriff then is obliged to take pledges, and insufficient pledges are no pledges, as laid down by lord Coke in 2 *Inst.* 340.

If the sheriff return insufficient pledges, they are no pledges within this statute, and in that case the sheriff shall be charged by this act as if he had taken no pledges at all. As soon as the bond is forfeited by return of *elongata*, the sheriff is liable, and an action on the case lies without first resorting to the pledges. 16 *Vin.* 400. Taking an assignment of a *bail bond* from the sheriff is a waiver of proceedings against him; *not so*, if a replevin bond. *Wilkinson on Replevin* 116, *Am. ed.* 42; *Williams's Saunders* 195, *n.*; *Gilbert on Replevin* 218; *Watson's Sheriff* 302.

There is no analogy to a case of bail bond. The plaintiff taking an assignment of the bail bond discharges the sheriff, and cannot afterwards rule him to return the writ. The plaintiff has an election against the sheriff or bail.

[Commonwealth v. Rees.]

The words in the statute 37 *Hen.* 6, " upon reasonable surety of sufficient persons," are added for the surety of the sheriff, and therefore if he take one, it is sufficient. Beaufage's Case, 10 *Co.* 101, *a.* But the replevin bond is not merely for the benefit of the sheriff, although it usually contains a clause for indemnification; but is for the benefit of the landlord. *Stat. Westm.* 2. The sheriff is, in England, bound to take two sureties in a replevin bond; and it is much to be doubted whether it would be good with only one. See Austen *v.* Howard, 7 *Taunt.* 327; 2 *Eng. Com. Law Rep.* 23.

This not being a case of election, why should the landlord be driven to the delay, and the costs and circuity of ascertaining by judicial decision whether the surety is or is not sufficient. It will not be contended that the sheriff is not liable in the first instance, without suing the pledges. *Bull. N. P.* 60, c. 4 (*Sheriff liable without Sc. Fa. against Pledges*).

Either the surety is or is not sufficient. If he is, then the sheriff has an opportunity of showing that by evidence in the suit against him, and in that case the plaintiff cannot recover. If he is not, then there is no necessity nor advantage in accumulating costs, increasing delay, &c. It may be said that the sheriff cannot sue the sureties; but he may pay the money and take an assignment. The sheriff can sue the surety at any time by getting an assignment, which he can do at any moment by paying the money.

The action by the avowant on the bond is for the benefit of the sheriff; because if he obtains payment in that way, it is in exoneration of the sheriff. If it be said that taking an assignment of the bond is an acknowledgement that the sureties are sufficient at the institution of the suit, this is not so, because the act makes it imperative on the sheriff to assign the bond, and yet at the same time, the sheriff's liability remains at the common law; and if it were an acknowledgement of the sufficiency of the sureties, the avowant cannot afterwards sue the sheriff, which it is admitted he may do. The remedies against the sheriff and on the bond are concurrent. The former existed at common law. The *Stat. Westm.* 2, intended to give a cumulative remedy, not incompatible with the former, but capable of being prosecuted at the same time. The *Stat. Westm.* 2 did not intend to impair any rights, or injure any remedy existing at common law.

The argument is, that the bond is the sheriff's security, of which

[Commonwealth v. Rees.]

he is deprived. But it is no more the sheriff's than the landlord's. It was intended by the statute of *Westm.* 2 to add to the landlord's security. It is contended that the landlord, having taken an assignment of the bond, is bound to go on and show by judgment and execution unproductive, that the surety is insufficient. *Cui bono* the idle ceremony of a return of *nulla bona* against the surety, if he is insufficient? It is of no use to the sheriff; it only increases delay and costs. But insolvency is a matter of fact. Neither the common law nor statute renders this judicial mode of proving insolvency imperative. It is not a term in the requisition. The sheriff ought not to complain. Here was the bond from the 22d of March 1832 to the 21st of February 1833 in his hands. The taking an assignment of the bond does not prevent our action. What effect have the other proceedings? The bond was assigned the 21st of February 1833; the same day an action of debt was brought on it; returned summoned as to Rachel Purdon; *nil habet* as to Joseph Purdon. This suit was discontinued on the 22d of July 1833, and same day a *capias* issued against Rachel Purdon and Joseph R. Purdon, and service accepted by John Purdon, Esq., in which judgment was entered April 30th, 1834 against Joseph R. Purdon in the sum of 400 dollars 68 cents. These proceedings are all for the benefit of the sheriff. The *scire facias* against the sheriff had issued on the 27th of May previous. The sheriff would be entitled at any time, on paying, to have the suit marked to his use. The doctrine of election does not apply to replevin bonds at all, as it does to bail bonds. Very slight evidence of insufficiency is sufficient to throw the burthen on the sheriff. *Gilbert's Rep.* 218; Saunders *v.* Darling, *Buller's N. P. Rep.* 60, *c.*

Where the sheriff had assigned a replevin bond to the plaintiff, in an action for taking insufficient sureties, no evidence of the execution of the bond is required. This shows that an action against the sheriff is maintainable after the assignment of the replevin bond. 2 *Saunders on Pleading* [773] 337.

This action for insufficient sureties may be maintained against the sheriff after the defendant has taken an assignment of the replevin bond, and sued both *principal* and *surety* thereon. 2 *Saunders on Pleading* [774] 338; Moyser *v.* Gray, *Cro. Car.* 446; Anon., *Sir William Jones's Rep.* 278.

*Randall,* for the defendants.

[Commonwealth v. Rees.]

The defence here is substantially taken by the sureties. The doctrine in regard to bail bonds is, undoubtedly, as a general rule, that an assignment of the bond is a release, *per se*, to the sheriff. It is admitted that a replevin bond is an exception. The sheriff, in replevin, may be made liable in two modes: 1, if he refuses an assignment of the bail bond; and 2, in case of assignment, by the plaintiff's assignee pursuing the sureties to the utmost. But after assignment, *while he holds the bond*, the plaintiff cannot sue the sheriff for taking insufficient sureties, until he has ascertained the *insufficiency* of the sureties. This can be done only by evidence of record, in judicial proceedings. Thus the plaintiff was bound to go on and issue execution, and have a return by the sheriff of "*nulla bona*;" for *non constat*, that though absent personally, the surety in replevin has not goods or lands in the bailiwick subject to levy on a *fieri facias*. The bond is the property *of the sheriff*; Oxley *v.* Cowperthwaite, 1 *Dall.* 349; Pearce *v.* Humphreys, 14 *Serg. & Rawle* 23; but he is obliged to assign it at the request of the plaintiff, or he is liable. Now the sheriff has no means of securing himself while the bond is out of his control. The plaintiff has then made his election, and he cannot revert to the sheriff till he has tested the insufficiency of the sureties in replevin in the mode pointed out, that is, "until they *are found* to be insolvent or insufficient." 1 *Saunders, tit. Replevin.* To confirm these views, see *Year Book* 11, *n.* 6, 16 *b.*; 16 *Viner* 400; Baker *v.* Garrett, 3 *Bing.* 56; Mounson *v.* Renshaw, 1 *Saund. Rep.* 195, *f.*

*Reply.*

The authorities cited on the other side are not to the point. What has been cited as a case from the *Year Book* (11, *n.* 6, 16 *b.*) is only a *dictum* of Babington, J. It was an action of debt against executors, and the question whether they should be charged *de bonis propriis*. Babington, in the course of the case, says, that either a *scire facias* may be brought against the pledges, and on return of *nihil* an action against the sheriff; or an action in the first instance against the sheriff, on suggestion of this matter. This is in the alternative. The practice, at an early period of the law, of bringing *scire facias* first against the pledges, has been long ago discontinued, as is shown by the text of *Viner* in the passage cited. 16 *Vin.* 400.

The passage from serjeant *Williams's* note to Mounson *v.* Renshaw, *Saunders's Rep.* 195, *f,* shows conclusively that the taking an assign-

[Commonwealth v. Rees.]

ment of the replevin bond is no waiver of proceedings against the sheriff, and by no means affirms that the insufficiency of the sureties must be ascertained by judgment in a suit against them.    Baker *v.* Garratt, 3 *Bing.* 56, is altogether foreign to the purpose for which it is cited.    It decided that the assignee of the replevin bond could not recover against the sheriff, as special damage *beyond the penalty of the replevin bond,* the expenses of a fruitless suit against the pledges, *unless* he gave notice of his intention to sue them to the sheriff.    It is rather an authority in our favour ; for it shows that the expenses beyond the penalty might be recovered, where notice was given to the sheriff of an intention to sue, on the ground that the sheriff might have come in and paid the bond ; as here we say the sheriff ought not to complain of our taking an assignment of the bond, or of proceeding on it, because he might at any moment have come and paid it, and thus avoided any accumulation of expense.    The cases cited on the other side not supporting the doctrine that the plaintiff, after taking an assignment of the replevin bond, cannot sue the sheriff till he has shown it to be fruitless by judgment, or has tendered back the bond to the sheriff, his position stands without authority.

The opinion of the Court was delivered by

Stroud, J.—According to the case stated, " the question intended to be raised is, whether the plaintiffs, having taken an assignment of the replevin bond from the sheriff, are precluded, by that act, and their subsequent proceedings, from recovery in this action."    This question the argument on both sides assumes to depend on the single point, whether the action has not been *improvidently* instituted, no *execution* having been issued on the judgment obtained on the replevin bond?

The 11th section of the act of the 21st of March 1772 (*Purd. Dig.* 783) directs, " that all sheriffs and other officers having authority to serve replevins may and shall, in every replevin of a distress for rent, take in their own names from the plaintiff and one responsible person as surety, a bond in double the value of the goods distrained, and conditioned for prosecuting the suit with effect and without delay, and for duly returning the goods and chattels distrained, in case a return shall be awarded before any deliverance be made of the distress ; and such sheriff or other officer taking any such bond shall, at the request and costs of the avowant or person making conusance, assign such bond to the avowant or person aforesaid, by indorsing

[Commonwealth v. Rees.]

the same and attesting it under his hand and seal in the presence of two credible witnesses: and if the bond so taken and assigned be forfeited, the avowant or person making conusance may bring an action and recover thereupon in his own name."

The only difference between this section of our act of assembly and the 23d section of the statute of 11 *George* 2, c. 19, is in the requisition by the latter of an *additional* surety in the replevin bond.

It might have been expected, therefore, that upon a law enacted so long since, and on a subject of so much practical application, the books would furnish decisions upon every variety of cases; yet none were cited by counsel, nor have we been able to find any upon the contested point before us.

Looking, then, at the reason of the thing, what is the proper conclusion to be formed. The replevin bond is to be taken in the name of the sheriff, and, without doubt, is intended to be for his protection as well as for the benefit of the avowant in the replevin. The avowant has the double security of the replevin bond, and of the recognizance of the sheriff and his official sureties. He may coerce an assignment by the sheriff of the former, without prejudicing, in any degree, his right of recourse to the sheriff and his sureties. *Note by Sergeant Williams to* Mounson *v.* Renshaw, 1 *Saund. Rep.* 195, *f*; *Watson on Sheriff* 302. This, though a great benefit to the avowant, yet works no injustice to the sheriff, provided the avowant is prompt in bringing suit upon the bond, prosecutes it with proper diligence, and suffers no unreasonable delay in awarding execution.

But ought he, having deprived the sheriff of all control of the bond, to be permitted to institute suit upon it, or not, at his pleasure; or, having commenced suit, to stop at any stage of the proceedings, allege his unwillingness to go further, and, without regard to the interest or convenience of the sheriff, turn round upon him and his sureties in the recognizance? The replevin bond is forfeited upon the recovery of judgment against the plaintiff in the replevin; he has then failed to *prosecute his suit with effect*; Perreau *v.* Bevan, 11 *Eng. C. L. Rep.* 236; and of course the sheriff, if the avowant has not elected to take an assignment of the bond, may, by suit upon it, without further delay, protect himself from ultimate loss on the call of the avowant, so far as the responsibility of the obligors will avail him for that purpose. Can it be just, then, to deprive him of this power, and yet compel him to take up the proceedings on the suit on the replevin bond, wherever the avowant may choose to abandon

them? We think not. The assignee having begun the suit, must carry it on, diligently and judiciously, until it be ascertained by execution to what amount, if any, the sureties are insufficient. In Lyon *v.* The Huntingdon bank, 12 *Serg. & Rawle* 68, where the Bank had exacted certain bonds with warrants of attorney, as *collateral* security for the payment of a note which was discounted by it, Chief Justice Tilghman said : "the legal inference is (unless there was proof to the contrary), that the bank took upon itself the care of attending to these bonds and pursuing all legal means to recover them. The obligors could make no legal payment, after notice of the assignment, to any other than the bank." This doctrine accords with the plain principles of justice, and is strictly applicable to the case at bar.

It was decided long since, in Oxley *v.* Cowperthwaite, 1 *Dall.* 349, that the sheriff is responsible for the sufficiency of the sureties in the replevin bond, on the *termination* of the replevin suit; and in Pearce *v.* Humphreys, 14 *Serg. & Rawle* 25, although the severity of this rule was felt and acknowledged, yet it was re-asserted and enforced to the extent established in the former case. This differs from the construction put upon the analogous statute in England ; it being now well settled there that the sheriff incurs no liability, provided the sureties, at the taking of the bond, were in good credit, and apparently responsible, and he neglected no proper means of ascertaining their true condition in respect to property. Hindle *v.* Blades, 1 *Eng. C. L. Rep.* 86 ; Sutton *v.* Waite, 17 *Ibid.* 96. Whilst this harsh feature is retained in our system, we do not feel ourselves called upon to add to the burthen of the sheriff a single grain beyond the requisition of express authority.

In the case stated, it seems to have been thought by the plaintiff's counsel that the fact of the surety's *non residence* in this county constituted, of itself, evidence of his insufficiency. This is a point which has not claimed our particular attention, as our decision is on a ground which does not extend the inquiry so far. It may not be unimportant, however, to observe, in conclusion, that where the guarantor of a bond was sued, the demand of payment and a refusal to pay, although coupled with the fact of *non residence* of the obligor, were not deemed evidence of insolvency. Johnston *v.* Chapman, 3 *Penns. Rep.* 20.

Judgment for defendant.